1
2
3
4
5
6
7                    **UNITED STATES DISTRICT COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9

10   BRENT ANDERSON, on behalf of          )   Case No. ED CV 17-2459 FMO (SHKx)
     himself and all others similarly situated,  )
11                                          )
                     Plaintiff,             )   **ORDER RE: MOTION FOR PRELIMINARY**
12                                          )   **APPROVAL OF CLASS AND**
              v.                            )   **REPRESENTATIVE ACTION SETTLEMENT**
13                                          )
     THE SHERWIN-WILLIAMS COMPANY,          )
14   et al.,                                )
                                            )
15                   Defendants.            )
                                            )
16   ─────────────────────────────         )

17          Having reviewed and considered all the briefing filed with respect to plaintiffs' Motion for

18   Preliminary Approval of Class and Representative Action Settlement (Dkt. 28, "Motion"), and the

19   oral argument presented at the hearing on October 3, 2019, the court concludes as follows.

20                                    **BACKGROUND**

21          On November 8, 2017, Brent Anderson ("Anderson") filed a putative class action complaint

22   against The Sherwin-Williams Company ("defendant" or "Sherwin-Williams") in San Bernardino

23   County Superior Court, asserting state law wage and hour claims.  (See Dkt. 1-1, Complaint).  On

24   December 7, 2017, defendant removed the action pursuant to the Class Action Fairness Act

25   ("CAFA"), 28 U.S.C. § 1332(d).  (See Dkt. 1, Notice of Removal at ¶ 1).  On October 9, 2019,

26   Anderson and Vernon Fife ("Fife") filed the operative First Amended Complaint ("FAC"), asserting

27   claims under the California Labor Code for:  (1) failure to pay all wages; (2) failure to pay proper

28   overtime; (3) failure to provide all meal periods; (4) failure to authorize and permit all paid rest

periods; (5) failure to pay proper meal and/or rest period premium wages; (6) derivative violations, pursuant to California Labor Code § 203; (7) derivative failure to timely furnish accurate itemized wage statements; (8) independent failure to timely furnish accurate itemized wage statements; (9) failure to fully reimburse work expenses; (10) penalties pursuant to the California Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698 et seq.; and (11) violations of the California Business and Professions Code ("UCL") §§ 17200, et seq.  (See Dkt. 35, FAC at ¶¶ 37-160). Plaintiffs' claims arise from allegations that defendant violated the California Labor Code, UCL, and applicable Wage Orders issued by the California Industrial Welfare Commission by failing to pay class members all wages owed for all hours worked, including failure to:  pay proper overtime wages; provide all legally-requisite meal and rest periods; furnish accurate wage statements; and reimburse for all work-related expenses.  (See id.).

After engaging in extensive factual and legal research, formal discovery, and an all-day mediation before the Hon. Carl J. West (Ret.), followed by continued direct communication, the partes reached a settlement on August 27, 2019.  (Dkt. 28-2, Declaration of Kevin T. Barnes ("Barnes Decl.") at ¶ 6).  The parties have defined the settlement class as "all persons employed by Defendant in California as hourly-paid Store Managers, Assistant Managers and Associates during the Settlement Period (defined as November 8, 2013 through Preliminary Approval [] or August 31, 2019, whichever is earlier)."  (Dkt. 28-3, Stipulation and Settlement of Class and Representative Action ("Settlement Agreement") at ¶ I.F).  The settlement applies to three subclasses:

(1)    "Store Manager subclass: all hourly paid Store Managers who worked for Defendant in California during the Settlement Period;"

(2)    "Assistant Manager subclass: all hourly paid Assistant Store Managers who worked for Defendant in California during the Settlement Period;" and

(3)    "Hourly Associate subclass: all hourly paid non-management employees who worked for Defendant in California during the Settlement Period."

(Id.).

Pursuant to the Settlement, defendant will pay a non-reversionary gross settlement amount of $3,650,000, (Dkt. 28-3, Settlement Agreement at ¶ I.I), which will be used to pay class members, the class representatives' service payments, settlement administration costs, the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"), and attorney's fees and costs. (Id.). The settlement provides for up to $912,500 (25% of the gross settlement amount) in attorney's fees, (id. at ¶ I.C); costs not to exceed $20,000, (id.); incentive payments of $12,500 for each class representative, (id. at I.H); and a $37,500 payment to the LWDA. (Id. at ¶ I.N). Also, the proposed settlement administrator, Rust Consulting Inc. ("Rust"), shall be paid approximately $40,000 from the gross settlement amount.[1] (Id. at ¶¶ I.BB-CC). The net settlement amount will be distributed to class members as follows: The Store Manager subclass will receive 48.8%; the Assistant Manager subclass will receive 20.1%; and the Hourly Associate subclass will receive 31.1% of the net settlement amount. (Dkt. 28-2, Barnes Decl. at ¶ 10).

In their Motion, plaintiffs seek an order (1) preliminarily approving the proposed settlement; (2) certifying the proposed settlement class; (3) appointing Anderson and Fife as class representatives; (4) appointing The Law Offices of Kevin T. Barnes, Raphael A. Katri, and Workman Law Firm, PC as class counsel; (5) appointing Rust as settlement administrator; (6) approving and ordering dissemination of the proposed class notice and forms; and (7) scheduling a final approval hearing. (See Dkt. 28, Motion at 2; Dkt. 28-1, Memorandum of Points and Authorities ("Memo") at 16-17).

## **LEGAL STANDARD**

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); In re Volkswagen "Clean Diesel" Mktg. Litig., 895 F.3d 597, 606 (9th Cir. 2018) (same).

---

[1] To the extent settlement administration costs exceed $40,000, such amount will be deducted from the class settlement amount, subject to the court's approval. (Dkt. 28-3, Settlement Agreement at ¶ I.CC).

I.    CLASS CERTIFICATION.

At the preliminary approval stage, the court "may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision as to the appropriateness of class certification."[2] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149, *3 (S.D. Fla. 2010) (internal citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").    In the settlement context, a court must pay "undiluted, even heightened, attention" to class certification requirements. See Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; In re Volkswagen, 895 F.3d at 606 (same). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011). Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

[2]  All "Rule" references are to the Federal Rules of Civil Procedure.

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

The party seeking class certification bears the burden of demonstrating that the proposed class meets the requirements of Rule 23. See Dukes, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.") (emphasis in original). However, courts need not consider the Rule 23(b)(3) issues regarding manageability of the class action, as settlement obviates the need for a manageable trial. See In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57 (9th Cir. 2019) ("The criteria for class certification are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with

5

manageability at trial.  However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

II.   FAIRNESS OF CLASS ACTION SETTLEMENT.

Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982).  Accordingly, a district court must determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (internal quotation marks omitted); see Fed. R. Civ. Proc. 23(e).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks and citation omitted).

"If the [settlement] proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). "[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness [given t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative[.]" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  As the Ninth Circuit has observed, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011); see Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017) ("When, as here, a class settlement is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the absent class members.").  "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."

In re Bluetooth, 654 F.3d at 946.

Approval of a class action settlement requires a two-step process – preliminary approval and the dissemination of notice to the class, followed by a later final approval. Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016). At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 472 (E.D. Cal. 2009). Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval." Spann, 314 F.R.D. at 319; see 4 Newberg on Class Actions, § 13:10 (5th ed.) ("[S]ending notice to the class costs money and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset."). "At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Spann, 314 F.3d at 319 (internal quotation marks omitted); see Bronson v. Samsung Electronics America, Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) ("Preliminary approval is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted); see also Fed. R. Civ. P. 23(e)(1)(B) (moving parties must show "that the court will likely be able to[] (i) approve the [settlement] proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the [settlement] proposal"); 4 Newberg on Class Actions, § 13:10 ("In 2018, Congress codified this

approach into Rule 23.").[3]

# DISCUSSION

I.   CLASS CERTIFICATION.

   A.   Rule 23(a) Requirements.

      1.   **Numerosity**.

The first prerequisite of class certification requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1).  Although impracticability does not hinge only on the number of members in the putative class, joinder is usually impracticable if a class is "large in numbers."  See Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds, 459 U.S. 810, 103 S.Ct. 35 (1982) (class sizes of 39, 64, and 71 are sufficient to satisfy the numerosity requirement).  "The Ninth Circuit has required at least fifteen members to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement."  Makaron v. Enagic USA, Inc., 324 F.R.D. 228, 232 (C.D. Cal. 2018).

Here, the class is so numerous that joinder is impracticable.  The settlement class includes approximately 5,700 members, (see Dkt. 28-1, Memo at 14; Dkt. 28-2, Barnes Decl. at ¶ 3), which easily exceeds the minimum threshold for numerosity.

      2.   **Commonality**.

The commonality requirement is satisfied if "there are questions of law or fact common to

---

[3]   The 2018 amendments to Rule 23 provide guidance for determining whether a settlement is fair, reasonable, and adequate, including whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  The Advisory Committee notes state that "[t]he goal of t[he] amendment [wa]s not to displace any factor" that courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  2018 Adv. Comm. Notes to Amendments to Rule 23.

the class[.]" Fed. R. Civ. P. 23(a)(2).  Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 564 U.S. at 350, 131 S.Ct. at 2551; <u>see</u> <u>Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." <u>Mazza v. Am. Honda Motor Co., Inc.</u>, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted).  "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." <u>Abdullah v.  U.S. Sec. Assocs., Inc.</u>, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); <u>see</u> <u>Mazza</u>, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact").  Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3).  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1019; <u>Mazza</u>, 666 F.3d at 589.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Hanlon</u>, 150 F.3d at 1019.

This case involves common class-wide questions that are apt to drive the resolution of plaintiffs' claims.  For example, the main issues in this action involve the legality of defendant's wage and hour policies and practices, including its pay plan, meal policies, and expense reimbursement plan, as well as the validity of defendant's wage statements.  (See Dkt. 28-1, Memo at 14).  According to plaintiffs, the plans and policies are uniform and can be proven by common objective evidence, including defendant's policies. (<u>Id.</u> at 15).  Under the circumstances, the court finds that plaintiffs have satisfied the commonality requirement.  <u>See</u>, <u>e.g.</u>, <u>Clesceri v. Beach City Investigations & Protective Servs., Inc.</u>, 2011 WL 320998, *5 (C.D. Cal. 2011) (finding commonality requirement met for preliminary approval because "the settlement class members

did not receive proper rest breaks; [] the settlement class members did not receive proper meal breaks; [and] the settlement class members did not receive adequate wage statements in compliance" with the Labor Code).

3. **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).  To demonstrate typicality, plaintiffs' claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class.").  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks and citation omitted).

Here, the claims of the named plaintiffs are typical of the claims of the class.  Plaintiffs, like the putative class members, were employed by defendant during the relevant time period, and were paid pursuant to the same policies and procedures at issue in this case.  (See Dkt. 28-1, Memo at 15).  Thus, plaintiffs' claims and the claims of the class arise from the same factual basis and are based on the same legal theories, i.e., that defendant violated their rights under California law by, for instance, failing to:  pay all wages owed for all hours worked; pay proper overtime wages; provide all legally-required meal and rest periods; furnish accurate wage statements; and reimburse for all work-related expenses.  (See Dkt. 35, FAC at ¶¶ 37-160).  Finally, the court is not aware of any facts that would subject the class representatives "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  In short, plaintiffs have satisfied the typicality requirement.

4. **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will

adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Id. (internal quotation marks omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  Id.

Here, the proposed class representatives, who have no individual claims separate from the class claims, (see, generally, Dkt. 35, FAC), do not appear to have any conflicts of interest with the absent class members.  (See Dkt. 28-1, Memo at 16; Dkt. 28-2, Barnes Decl. at ¶ 5); see, e.g., Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' – particularly because the named Plaintiffs have no separate and individual claims apart from the Class.").  Plaintiff Anderson, who has "participated in all stages of the litigation[,]" (Dkt. 36-3, Declaration fo Class Representative Brent Anderson in Support of Plaintiffs' Motion for Preliminary Approval of Class and Representative Action Settlement ("Anderson Decl.") at ¶ 3), states that he "always considered the interests of the other Class Members just as [he] ha[s] [his] own interests and understand[s] that [he] ha[s] to put the interests of the other Class Members before [his] own." (Id. at ¶ 6).  Plaintiff Fife states that he has worked closely with his lawyers, before and after his action was filed, (see Dkt. 36-4, Declaration of Vernon Fife in Support of Plaintiffs' Motion for Preliminary Approval of Class and Representative Action Settlement ("Fife Decl.") at ¶¶ 7-8), and that he "did [his] best to put the best interests of the class members ahead of [his] own interests[.]" (Id. at ¶ 10).  In short, "[t]he adequacy-of-representation requirement is met here because Plaintiffs have the same interests as the absent Class Members[.]"  Barbosa, 297 F.R.D. at 442.

Finally, as noted earlier, adequacy "also factors in competency and conflicts of class counsel."  Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251.  Here, the Settlement Agreement provides that the court appoint The Law Offices of Kevin T. Barnes, Raphael A. Katri, and Workman Law Firm, PC as class counsel. (See Dkt. 28-3, Settlement Agreement at ¶ I.D (defining class counsel); Dkt. 28, Motion at 2).  Having reviewed the declarations of proposed class counsel,

(see Dkt. 28-2, Barnes Decl. at ¶¶ 12-17; Dkt. 28-9, Declaration of Raphael A. Katri at ¶¶ 2-5; Dkt. 28-10, Declaration of Robin G. Workman ("Workman Decl.") at ¶¶ 9-14), the court finds that plaintiffs' counsel are competent, and there are no issues as to the adequacy of representation. See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

       B.    Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted). The rule requires two different inquiries, specifically a determination as to whether: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see Spann, 314 F.R.D. at 321-22.

       1.    **Predominance**.

"[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see Amchem, 521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."); In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance inquiry . . . [is] the balance between individual and common issues."). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022 (internal quotation marks and citations omitted); Abdullah, 731 F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."). Additionally, the

1  class damages must be sufficiently traceable to plaintiffs' liability case.  See Comcast Corp. v.

2  Behrend, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

3  Here, plaintiffs have shown that questions common to the classes, such as whether

4  defendant's pay plan, policies, and wage statements were compliant with California law,

5  predominate this litigation.  (See Dkt. 28-1, Memo at 14-15).  The determination of those questions

6  will establish defendant's liability on a class-wide basis.  In other words, "despite the existence of

7  minor factual differences between the potential class members," the answers to these questions

8  would drive the resolution of the litigation, "as the common issues predominate over varying

9  factual predicates[.]"  See Clesceri, 2011 WL 320998, at *7 (internal quotation marks omitted);

10  Tyson Foods, Inc. v. Bouaphakeo, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central

11  issues in the action are common to the class and can be said to predominate, the action may be

12  considered proper under Rule 23(b)(3) even though other important matters will have to be tried

13  separately, such as damages or some affirmative defenses peculiar to some individual class

14  members.") (internal quotation marks omitted); see also Senne v. Kansas City Royals Baseball

15  Corp., 934 F.3d 918, 938 (9th Cir. 2019) ("[P]redominance in employment cases is rarely defeated

16  on the grounds of differences among employees so long as liability arises from a common practice

17  or policy of an employer.") (internal quotation marks omitted).  Finally, the relief sought applies to

18  all class members and is traceable to plaintiffs' liability case.  See Comcast, 569 U.S. at 35, 133

19  S.Ct. at 1433.  In short, the court is persuaded that "[a] common nucleus of facts and potential

20  legal remedies dominates this litigation."  Hanlon, 150 F.3d at 1022.

21          2.  **Superiority**.

22  "The superiority inquiry under Rule 23(b)(3) requires determination of whether the

23  objectives of the particular class action procedure will be achieved in the particular case" and

24  "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."

25  Hanlon, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to

26  superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

27  The first factor considers "the class members' interests in individually controlling the

28  prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs

against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation." Barbosa, 297 F.R.D. at 444.  Here, plaintiffs do not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member.  (See, generally, Dkt. 35, FAC).  The alternative method of resolution – pursuing individual claims for a relatively modest amount of damages – would likely never be brought, as "litigation costs would dwarf potential recovery."  Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also the superior method of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011) ("Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action.").  In short, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so."  Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P. 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling their own litigation[.]"  2 Newberg on Class Actions, § 4:70 at p. 277 (5th ed. 2012) (emphasis omitted).  Here, although Fife filed a separate putative class action against defendant, he has since joined as a named plaintiff in the instant action, (see Dkt. 35, FAC), and the parties have advised the court in the Fife action that they have reached a classwide settlement that would encompass the claims in that action.  (See Dkt. 28-1, Memo at 2).

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and the fourth factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the

third and fourth factors are rendered moot and are irrelevant." Barbosa, 297 F.R.D. at 444;  see

Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class

certification, a district court need not inquire whether the case, if tried, would present intractable

management problems, . . . for the proposal is that there be no trial.") (citation omitted).

The only factors in play here weigh in favor of class treatment.  Further, the filing of

separate suits by thousands of other class members "would create an unnecessary burden on

judicial resources." Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court finds that

the superiority requirement is satisfied.

II.     FAIRNESS,    REASONABLENESS,    AND    ADEQUACY    OF    THE    PROPOSED

SETTLEMENT.

A.     The Settlement is the Product of Arm's-Length Negotiations.

"This circuit has long deferred to the private consensual decision of the parties." Rodriguez

v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  The Ninth Circuit has "emphasized" that

> the court's intrusion upon what is otherwise a private consensual agreement
> negotiated between the parties to a lawsuit must be limited to the extent
> necessary to reach a reasoned judgment that the agreement is not the
> product of fraud or overreaching by, or collusion between, the negotiating
> parties, and that the settlement, taken as a whole, is fair, reasonable and
> adequate to all concerned.

Id. (internal quotation marks omitted).  However, as noted above, when a settlement is negotiated

prior to class certification, "such agreements must withstand an even higher level of scrutiny for

evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)

before securing the court's approval as fair." Bluetooth, 654 F.3d at 946.

Here, plaintiffs' counsel diligently investigated the case, and the parties engaged in formal

discovery, including interrogatories and document production.  (See Dkt. 28-2, Barnes Decl. at ¶

6).  Prior to the parties' mediation, which was conducted by Judge West (Ret.), a respected

neutral, see Gutierrez v. Stericycle, Inc., 2018 WL 10150821, *15 (C.D. Cal. 2018), defendant

provided "extensive documentation and data" related to plaintiffs' claims, including work weeks,

1   class size, and other necessary information to permit plaintiffs to conduct a damages  analysis.

2   (Dkt. 28-2, Barnes Decl. at ¶ 6).  Plaintiffs also hired an expert to prepare damages calculations

3   and to assess defendant's potential exposure in this case.  (Id.).  Finally, plaintiffs' counsel has

4   concluded that the settlement is "fair and reasonable[.]"  (Id. at ¶¶ 6, 10; see also Dkt. 28-10,

5   Workman Decl. at ¶ 8).

6         Based on the evidence and record before the court, the court is persuaded that the parties

7   thoroughly investigated and considered their own and the opposing parties' positions.  The parties

8   had a sound basis for measuring the terms of the settlement against the risks of continued

9   litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by,

10   or collusion between, the negotiating parties[.]"  Rodriguez, 563 F.3d at 965 (internal quotation

11   marks omitted).

12         B.    The Amount Offered In Settlement Falls Within a Range of Possible Judicial

13               Approval and is a Fair and Reasonable Outcome for Class Members.

14               1.    **Recovery for Class Members.**

15         As described above, the class members will share in a non-reversionary gross settlement

16   amount of $3,650,000.  (See Dkt. 28-3, Settlement Agreement at ¶ I.I).  According to plaintiffs,

17   (see Dkt. 28-2, Barnes Decl. at ¶ 9), defendant's realistic exposure in this case was approximately

18   $5,717,599.  (Id. at ¶ 10).  The settlement amount represents approximately 64% of that amount.

19   (See id.).  If the requested attorney's fees and costs, the LWDA payment, settlement

20   administration costs, and the service awards are approved, plaintiffs expect that the average store

21   manager will receive $2,081, the average assistant manager will receive $671, and the average

22   hourly associate will receive $165.  (See Dkt. 28-1, Memo at 8; Dkt. 28-2, Barnes Decl. at ¶ 10).

23         Under the circumstances, the court is persuaded that the settlement is fair, reasonable, and

24   adequate, particularly when viewed in light of the litigation risks in this case.  Even putting aside

25   defendant's defenses, and assuming class certification were granted and upheld on appeal,

26   defeating summary judgment, winning the case at trial, and then sustaining the final judgment on

27   appeal would be very difficult.  (See, e.g., Dkt. 28-1, Memo at 11-12).  In short, the risks of

28   continued litigation are significant, and the court takes these real risks into account.  Weighed

against those risks, and coupled with the delays associated with continued litigation, the court is persuaded that the benefits to the class fall within the range of reasonableness. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (ruling that "the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [wa]s fair and adequate"); In re Uber, 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth 7.5% or less of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).  Finally, the settlement promotes enforcement of wage and hour laws in that it provides for recovery for plaintiffs' PAGA claim.[4]  (See 28-3, Settlement Agreement at ¶¶ I.N, VI).

    2. **Release of Claims**.

   The court must also consider whether a class action settlement contains an overly broad release of liability.  See Newberg on Class Actions § 13:15 (5th ed. 2014) ("Beyond the value of the settlement, courts [have] rejected preliminary approval when the proposed settlement contains obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis," without the establishment of a settlement fund or any other benefit to the class).

   Here, class members who do not exclude themselves from the settlement will

    release all claims alleged in the operative complaint during the Settlement

---

[4] Although the LWDA received notice of the settlement, (See Dkt. 28-2, Barnes Decl. at ¶ 22; Dkt. 28-8, LWDA Notice), it did not object or respond, which the court construes as consent to the proposed settlement.  See Echavez v. Abercrombie & Fitch Co., Inc., 2017 WL 3669607, *3 (C.D. Cal. 2017) ("[T]he Court finds persuasive that LWDA was invited to file a response to the proposed settlement agreement in this case and elected not to file any objections or opposition thereto.  The Court infers LWDA's non-response is tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount.").

Period and all claims that could have been pled based upon the facts alleged in the operative complaint against Defendant and [the Released Parties], for the alleged failure to pay overtime wages at the legal overtime pay rate, failure to pay all straight time and overtime wages for all time spent working, failure to provide meal periods and pay meal period premiums at the legal pay rate, failure to authorize and permit all paid rest periods and pay rest period premiums at the regular rate of pay, failure to fully reimburse for reasonable business expenses; failure to timely pay final wages due at separation, failure to furnish accurate wage statements, penalties pursuant to California Labor Code § 2698 and 2699 and unfair business practices related to the above claims up to and including the date of preliminary approval[.][5]

(Dkt. 28-3, Settlement Agreement at ¶ I.W).  Under the circumstances, the court finds that the release adequately balances fairness to plaintiffs and the absent class members with defendant's business interest in ending this litigation.  See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C.    The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representatives.

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit."  Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives."  Id.  The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest.  See id. at 1165.  "In deciding whether

---

[5]  The release for the class representatives is broader and includes a waiver of rights under Cal. Civ. Code § 1542.  (Dkt. 28-3, Settlement Agreement at ¶ I.T).

[an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

The Settlement Agreement provides that plaintiffs may apply to the court for a service award of $12,500 each. (See Dkt. 28-3, Settlement Agreement at ¶ IV). Although plaintiffs appear to have been diligent in litigating the case, (see Dkt. 36-3,  Anderson Decl. at ¶¶ 3, 6, 8-14; Dkt. 36-4, Fife Decl. at ¶¶ 7-8, 10), the court believes that a $12,500 service payment for each plaintiff is excessive.  Under the circumstances here, the court tentatively finds that an incentive payment of no more than $5,000 for each plaintiff is appropriate.  See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding an incentive award of $5,000 presumptively reasonable).

D.    Class Notice and Notification Procedures.

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B).  Federal Rule of Civil Procedure 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal quotation marks omitted).  Settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard

at the hearing[.]"  Gooch v. Life Inv'rs Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (internal quotation marks omitted); see, e.g., Wershba v. Apple Comput., Inc., 91 Cal.App.4th 224, 252 (2001), disapproved of on other grounds by Hernandez v. Restoration Hardware, Inc., 4 Cal.5th 260, 269 (2018) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members."). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms.  See In re Integra Realty Resources, Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.").

Here, the parties request that Rust be appointed as settlement administrator. (See Dkt. 28-3, Settlement Agreement at ¶ I.BB).  Class members will receive notice by first class mail, (see id. at ¶ X.C), which will consist of the Notice of Class and Representative Action Settlement (Dkt. 36-2, "Notice").  The Notice describes the nature of the action and the claims alleged.  (See id. at 2-3); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  It provides the definition of the class, (see Dkt. 36-2, Notice at 1-2); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement amount, the distribution of that amount, and the release.  (See Dkt. 36-2, Notice at 3-6).  It includes an explanation that lays out the class members' options under the settlement: they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement and pursue their claims separately against defendant. (See id. at 4-5); see also Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).  Finally, the Notice explains the procedures for objecting to the settlement, (see Dkt. 36-2, Notice at 5), and provides information about the Final Fairness Hearing.  (See id. at 2, 5).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members.  Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and complies with the requirements of due process.

E.     Summary.

The court's preliminary evaluation of the Settlement Agreement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys[.]"  Manual for Complex Litigation § 21.632 at 321 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.     Motion for Preliminary Approval of Class and Representative Action Settlement **(Document No. 28)** is **granted** upon the terms and conditions set forth in this Order.

2.   The court preliminarily certifies the class, as defined in ¶ I.F of the Stipulation and Settlement of Class and Representative Action ("Settlement Agreement") (Dkt. 28-3), for the purposes of settlement.

3.   The court preliminarily appoints plaintiffs Brent Anderson and Vernon Fife as class representatives for settlement purposes.

4.   The court preliminarily appoints The Law Offices of Kevin T. Barnes, Raphael A. Katri, and Workman Law Firm, PC as class counsel for settlement purposes.

5.   The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.   The court approves the form, substance, and requirements of the class Notice, (Dkt. 36-2).   The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.   Rust shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **June 25, 2020**.

8.   Plaintiffs shall file a motion for an award of class representative incentive payments and attorney's fees and costs no later than **July 10, 2020,** and notice it for hearing for the date of the final approval hearing set forth below.

9.   Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive awards; or (b) exclude him or herself from the settlement must file his or her objection to the settlement, or request exclusion no later than **August 10, 2020**, in accordance with the Notice.

10.   Plaintiffs shall, no later than **September 3, 2020,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

11.   Defendant may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **September 10, 2020**.

12.  Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive awards, shall, no later than **October 6, 2020**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13.  A final approval (fairness) hearing is hereby set for **October 15, 2020,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and incentive awards to the class representatives.

14.  All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 12th day of May, 2020.


/s/
Fernando M. Olguin
United States District Judge