**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRENT ANDERSON, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>THE SHERWIN-WILLIAMS COMPANY, et al.,<br><br>　　　　　Defendants. | Case No. ED CV 17-2459 FMO (SHKx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. 41, "Motion"), and the oral argument presented during the final fairness hearing held on October 15, 2020, the court concludes as follows.

**BACKGROUND**

On November 8, 2017, Brent Anderson ("Anderson") filed a putative class action complaint against The Sherwin-Williams Company ("defendant" or "Sherwin-Williams") in San Bernardino County Superior Court, asserting state law wage and hour claims. (See Dkt. 1-1, Complaint). On December 7, 2017, defendant removed the action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (See Dkt. 1, Notice of Removal ("NOR") at ¶ 1). On October 9, 2019, Anderson and Vernon Fife ("Fife") (collectively, "plaintiffs") filed the operative First Amended Complaint ("FAC"), asserting claims under the California Labor Code for: (1) failure to pay all

wages; (2) failure to pay proper overtime; (3) failure to provide all meal periods; (4) failure to authorize and permit all paid rest periods; (5) failure to pay proper meal and/or rest period premium wages; (6) derivative violations, pursuant to California Labor Code § 203; (7) derivative failure to timely furnish accurate itemized wage statements; (8) independent failure to timely furnish accurate itemized wage statements; (9) failure to fully reimburse work expenses; (10) penalties pursuant to the California Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698, et seq.; and (11) violations of the California Business and Professions Code ("UCL") §§ 17200, et seq. (See Dkt. 35, FAC at ¶¶ 37-160).

Plaintiffs' claims arise from allegations that defendant violated the California Labor Code, UCL, and applicable Wage Orders issued by the California Industrial Welfare Commission by failing to pay class members all wages owed for all hours worked, including failure to: pay proper overtime wages; provide all legally-requisite meal and rest periods; furnish accurate wage statements; and reimburse for all work-related expenses. (See Dkt. 35, FAC at ¶¶ 37-160); (Dkt. 40, Court's Order of May 12, 2020 ("Preliminary Approval Order" or "PAO") at 2). After engaging in extensive factual and legal research, formal discovery, and an all-day mediation with extensive follow-up communications with the mediator, the Hon. Carl J. West (Ret.), the parties reached a settlement on August 27, 2019. (See Dkt. 40, PAO at 2).

The parties define the settlement class as "all persons employed by Defendant in California as hourly-paid Store Managers, Assistant Managers and Associates during the Settlement Period (defined as November 8, 2013 through Preliminary Approval [] or August 31, 2019, whichever is earlier)." (Dkt. 28-3, Stipulation and Settlement of Class and Representative Action ("Settlement Agreement") at ¶ I.F). The settlement applies to three subclasses:

(1) "Store Manager subclass: all hourly paid Store Managers who worked for Defendant in California during the Settlement Period;"

(2) "Assistant Manager subclass: all hourly paid Assistant Store Managers who worked for Defendant in California during the Settlement Period;" and

(3) "Hourly Associate subclass: all hourly paid non-management employees who worked for Defendant in California during the Settlement Period."

(Id.).

Under the settlement, defendant will pay a non-reversionary amount of $3,650,000, which will be used to pay class members, the class representatives' service payments, settlement administration costs, the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"), and attorney's fees and costs. (See Dkt. 28-3, Settlement Agreement at ¶ I.I). The settlement provides for up to 25% of the gross settlement amount in attorney's fees, (see id. at ¶ I.C); costs not to exceed $20,000, (see id.); incentive payments of $12,500 for each class representative, (see id. at I.H); and a $37,500 payment to the LWDA. (See id. at ¶ I.N). Also, the settlement administrator, Rust Consulting Inc. ("Rust"), shall be paid approximately $40,000 from the settlement amount.[1] (See id. at ¶¶ I.BB-CC). The net settlement amount will be distributed to class members as follows: the Store Manager subclass will receive 48.8%; the Assistant Manager subclass will receive 20.1%; and the Hourly Associate subclass will receive 31.1% of the net settlement amount. (See Dkt. 40, PAO at 3).

On May 12, 2020, the court granted preliminary approval of the settlement, appointed Rust as the settlement administrator, and directed Rust to provide notice to class members. (See Dkt. 40, PAO at 21-22). Thereafter, Rust implemented the notice program approved by the court. (See Dkt. 41-2, Exh. 1, Declaration of Amanda Myette for Rust Consulting, Inc. ("Myette Decl.") at ¶¶ 11-12 & Exh. A (Class Notice)); (Dkt. 40, PAO at 19-20) (approving notice program). Notice packets were sent to 6,225 class members.[2] (See Dkt. 41-2, Exh. 1, Myette Decl. at ¶ 11). As of August 25, 2020, Rust had received 12 requests for exclusion and no objections. (See Dkt. 42, Exh. 1, Supplemental Declaration of Amanda Myette ("Supp. Myette Decl.") at ¶¶ 14-15).

Plaintiffs now seek: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) incentive payments for plaintiffs. (See Dkt. 41, Motion).

---

[1] If settlement administration costs exceed $40,000, the additional amount will be deducted from the class settlement amount, subject to the court's approval. (See Dkt. 28-3, Settlement Agreement at ¶ I.CC).

[2] As of August 25, 2020, 90 class notices were ultimately undeliverable. (See Dkt. 50, Exh. 1, Second Supplemental Declaration of Amanda Myette for Rust Consulting, Inc. at ¶ 2).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule[3] 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting Officers for Justice, 688 F.2d at 625), who must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "[T]he settlement must stand or fall as a whole." Officers for Justice, 688 F.2d at 630.

In order to approve a settlement in a class action, the court must conduct a two-step inquiry.[4] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard). In determining whether a settlement is fair, reasonable, and adequate, the court must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the

---

[3] All "Rule" references are to the Federal Rules of Civil Procedure.

[4] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, CAFA notice was provided and no objections were received. (See Dkt. 51, Declaration of Nicholas D. Poper [] at ¶¶ 3-4).

reaction of the class members of the proposed settlement."[5] In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)); Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (same).[6]

However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight [] factors alone is not enough[.]" Bluetooth, 654 F.3d at 946 (emphasis in original). This is because, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id.; see Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017) ("When, as here, a class settlement is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the absent class members."). Thus, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Bluetooth, 654 F.3d at 946. In assessing such an agreement, courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a

---

[5] The 2018 amendments to Rule 23 provide further guidance for determining whether a settlement is fair, reasonable, and adequate, including whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). "The goal of th[e] amendment [wa]s not to displace any factor" courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." 2018 Adv. Comm. Notes to Amendments to Rule 23. The court addressed several of the factors set forth in the amended Rule 23(e) during the preliminary approval process. (See Dkt. 40, PAO at 15-16 (considering whether the settlement was the product of arm's-length negotiations); id. at 16-18 (addressing whether recovery for the class is fair, adequate, and reasonable)). In evaluating the settlement, the court will consider the factors set forth by the Ninth Circuit, while also taking into account the Rule 23 amendments.

[6] Although the settlement approval in Campbell occurred prior to the 2018 amendment to Rule 23(e)(2), the Ninth Circuit noted that applying the amendment would not change its conclusions affirming the district court's approval of the settlement. See Campbell, 951 F.3d at 1121 n. 10 (quoting advisory committee's note to 2018 amendment).

disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[7] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Id. at 947 (internal quotation marks and citations omitted).

## DISCUSSION

I. FINAL APPROVAL OF CLASS SETTLEMENT.

    A. Class Certification.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 40, PAO at 8-15, 21). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e). See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

    B. Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

Here, after undertaking the required examination, the court approved the form of the proposed class notice. (See Dkt. 40, PAO at 19-21). As discussed above, the notice program

---

[7] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." Id. at 940 n. 6.

6

was implemented by Rust. (Dkt. 41-2, Exh. 1, Myette Decl. at ¶¶ 11-12 & Exh. A (Class Notice)). Accordingly, based on the record and its prior findings, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (See id. at Exh. A (Class Notice)).

    C.    Whether the Class Settlement is Fair, Adequate and Reasonable.

        1.    **The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 975 (E.D. Cal. 2012) (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

In granting preliminary approval of the settlement, the court recognized that the "risks of continued litigation [were] significant" and when "[w]eighed against those risks" and the "delays associated with continued litigation," the "benefits to the class" were within the range of reasonableness. (See Dkt. 40, PAO at 16-17). Here, settlement affords class members immediate monetary benefits in the face of various defenses to plaintiffs' claims and substantial delay. (See id. at 16-17); (Dkt. 41-1, Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorney Fees, Costs and Class Representative Enhancements ("Memo") at 8-10). Under the circumstances, the court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the court finds that these factors support approval of the settlement.

        2.    **The Risk of Maintaining Class Action Status Through Trial**.

Because the parties reached a settlement prior to the filing of a motion for class

certification, plaintiffs faced a risk that the class would not be certified. Accordingly, this factor weighs in favor of approving the settlement. See, e.g., Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009) ("At the time of settlement, the risk remained that the nationwide class might be decertified[.]"); Rosado v. Ebay Inc., 2016 WL 3401987, *4 (N.D. Cal. 2016) ("Although a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.").

### 3. **The Amount Offered in Settlement**.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval, the court found that the settlement amount represented 64% of defendant's realistic exposure, (see Dkt. 40, PAO at 16), and concluded the settlement benefits were fair, reasonable, and adequate. (See id.); see also Linney, 151 F.3d at 1242 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). Accordingly, this factor also weighs in favor of final approval.

### 4. **The Extent of Discovery Completed and the Stage of Proceedings**.

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Spann v. J.C. Penney Corp., 211 F.Supp.3d 1244, 1256 (C.D. Cal. 2016) (quoting Nat'l Rural Telecomms., 221 F.R.D. at 527). The court previously examined these factors at length, noting that the parties had engaged in formal discovery, which included interrogatories and document production, (see Dkt. 40, PAO at 15), and "thoroughly investigated and considered their own and the opposing parties' positions[,]" (id. at 16), which enabled them to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Id.). In other words, "the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions." Spann, 211 F.Supp.3d at 1256; Barbosa v. Cargill Meat

Sols. Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted). This factor also supports approval of the settlement.

5. **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Spann, 211 F.Supp.3d at 1257 (quoting Nat'l Rural Telecomms., 221 F.R.D. at 528); see also Fed. R. Civ. P. 23(e)(2)(A) (courts should consider whether "class counsel have adequately represented the class").[8] Here, class counsel, who adequately represented the class, (see Dkt. 40, PAO at 10-12), view the settlement as "fair and reasonable." (Id. at 16) (internal quotation marks omitted); (see Dkt. 41-1, Memo at 13-14). Thus, this factor also supports approval of the settlement.

6. **The Presence of a Governmental Participant**.

There is no government participant in this matter. Accordingly, this factor is inapplicable. See Spann, 211 F.Supp.3d at 1257 (concluding "[t]here is no government participant in this matter[,]" rendering "this factor [] not relevant").

7. **The Reaction of Class Members to the Proposed Settlement**.

The reaction of the class members to the proposed settlement has been very positive. Significantly, there were no objections and there were only 12 requests for exclusion. (See Dkt. 42, Supp. Myette Decl. at ¶¶ 14-15.). The lack of objections and limited requests for exclusion support approval of the settlement. See Spann, 211 F.Supp.3d at 1257 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class

---

[8] In its Preliminary Approval Order, the court found that plaintiffs were adequate class representatives. (See Dkt. 40, PAO at 11); Fed. R. Civ. P. 23(e)(2)(A) (in approving class action settlements courts should consider whether "the class representatives . . . have adequately represented the class").

9

members.") (internal quotation marks omitted); see, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of the 2,385 class members and there were no objections).

D. Whether there are Signs of Collusion.

"When, as here, the settlement was negotiated before the district court certified the class, there is an even greater potential for a breach of fiduciary duty by class counsel, so [the Ninth Circuit] require[s] the district court to undertake an additional search for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Volkswagen "Clean Diesel" Mktg. Litig., 895 F.3d 597, 610-11 (9th Cir. 2018) (internal quotation marks omitted). In granting preliminary approval, the court carefully scrutinized the settlement and determined that it was the product of arms-length negotiations, (see Dkt. 40, PAO at 15-16), and that there was "no evidence that the settlement [was] 'the product of fraud or overreaching by, or collusion between, the negotiating parties[.]'" (Id. at 16) (quoting Rodriguez, 563 F.3d at 965).

Nothing has changed since preliminary approval to raise any red flags or "subtle signs" of collusion. No funds will revert to defendant, (see Dkt. 28-3, Settlement Agreement at ¶ I.I), and although the Settlement Agreement includes a clear sailing provision, (see id. at ¶ I.C), the court is persuaded that the provision does not undermine the fairness of the settlement. See Bluetooth, 654 F.3d at 948. For example, any fees not awarded to class counsel will be added to the settlement fund from which payments to class members will be made. See, e.g., Russell v. Kohl's Dep't Stores, Inc., 755 F.Appx. 605, 608 (9th Cir. 2018) (concluding that existence of clear sailing provision did not undermine settlement in part because class counsel's fees "would come from a common fund" and "fees not awarded to counsel . . . would not revert" to defendant).

10

In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion.

II.    ATTORNEY'S FEES, COSTS AND SERVICE AWARDS.

The Settlement Agreement provides for up to $912,500 (25% of the gross settlement amount) in attorney's fees. (See Dkt. 28-3, Settlement Agreement at ¶¶ I.C, III.).

A.    Attorney's Fees.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees. See Mangold v. Cal. Public Util. Commc'n, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."); Rodriguez v. Disner, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees."). However, courts "may still look to federal authority for guidance in awarding attorneys' fees." Black v. T-Mobile USA, Inc., 2019 WL 3323087, *5 (N.D. Cal. 2019) (citing Apple Computer, Inc. v. Sup. Ct., 126 Cal.App.4th 1253, 1264 n. 4 (2005)).

The Ninth Circuit and the California Supreme Court have both held that trial courts have the discretion to choose among two different methods for calculating a reasonable attorney's fees award. See Laffitte v. Robert Half Int'l Inc., 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts."); Bluetooth, 654 F.3d at 942 (noting that "courts have discretion to employ either the lodestar method or the percentage-of-recovery method"). "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty

and complexity of the issues, the results obtained, and the contingent risk presented." Laffitte, 1 Cal.5th at 489 (internal quotation marks omitted); see also In re Hyundai, 926 F.3d at 570. In the alternative, "[t]he percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." Laffitte, 1 Cal.5th at 489; see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998); In re Hyundai, 926 F.3d at 570 (same).

Here, class counsel seek attorney's fees pursuant to the percentage of the fund method, (see Dkt. 41-1, Memo at 14-15), which the court in its discretion will utilize. See Bluetooth, 654 F.3d at 942 ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."); Laffitte, 1 Cal.5th at 504. "Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent." Smith v. CRST Van Expedited, Inc., 2013 WL 163293, *5 (S.D. Cal. 2013); see In re Consumer Privacy Cases, 175 Cal.App.4th 545, 557 n. 13 (2009) ("A fee award of 25 percent is the benchmark award that should be given in common fund cases.") (internal quotation and alteration marks omitted); Bluetooth, 654 F.3d at 942 (noting benchmark is a reasonable fee award); In re Hyundai, 926 F.3d at 570-71 (recognizing 25% benchmark and noting that the percentage method is "a rough approximation of a reasonable fee"); see, e.g., Black, 2019 WL 3323087, at *6 (utilizing federal 25% benchmark in diversity class action); Lloyd v. Navy Federal Credit Union, 2019 WL 2269958, *13 (S.D. Cal. 2019) (same). The 25% benchmark "can be adjusted upward or downward, depending on the circumstances." In re Hyundai, 926 F.3d at 570; Stetson v. Grissom, 821 F.3d 1157, 1165 (9th Cir. 2016) (noting that the bench mark is 25%, "which the district court may adjust upward or downward to account for any unusual circumstances involved in the case") (internal quotation marks and alterations omitted); see also Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). In determining whether to depart

1  from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including: (1)
2  the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work;
3  (4) the contingent nature of the fee; and (5) awards made in similar cases. See Vizcaino v.
4  Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Group, Inc., 2017 WL
5  661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DCD-Rental Antitrust Litig., 779
6  F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could
7  apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an
8  exhaustive list").

9  Under the circumstances, the court finds the requested attorney's fees, which do not depart
10 from the 25% benchmark, to be a reasonable fee. See In re Hyundai, 926 F.3d at 570-71
11 (recognizing 25% benchmark and noting that the percentage method is "a rough approximation
12 of a reasonable fee"). A lodestar cross-check further supports the reasonableness of the fee
13 request. Based on counsel's lodestar of $ 578,250.50, (see Dkt. 41-2, Declaration of Kevin T.
14 Barnes in Support of Final Approval of Class Action Settlement, Attorney Fees, Costs and Class
15 Representative Enhancements at ¶ 17 & Exh. 3); (Dkt. 41-3, Declaration of Raphael A. Katri in
16 Support of Final Approval of Class Action Settlement, Attorney Fees, Costs and Class
17 Representative Enhancement at ¶ 6 & Exh. 1); (Dkt. 41-4, Declaration of Robin G. Workman in
18 Support of Plaintiffs' Motion for Final Approval of Class and Representative [sic] Action Settlement
19 at ¶ 13 & Exh. H), the fee request equates to a modest multiplier of 1.58. (See Dkt. 41-1, Memo
20 at 20, 23-24).

21  B.   Costs.

22  Class counsel seek $15,052.41 in costs. (See Dkt. 41-1, Memo at 5, 24). The court finds
23 that the costs incurred by class counsel over the course of this litigation are reasonable, and
24 therefore awards a total of $15,052.41 in costs.

25  C.   Class Representative Service Awards.

26  "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,
27 are eligible for reasonable incentive payments." Staton, 327 F.3d at 977; see Wren v. RGIS
28 Inventory Specialists, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit

that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). Here, plaintiffs request that the court grant service awards in the amount of $5,000 to each named plaintiff. (See Dkt. 41-1, Memo at 5, 25-27). Such an incentive award is presumptively reasonable, see Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding an incentive award of $5,000 presumptively reasonable), and the court finds that it does not create a conflict of interest between plaintiffs and class members. See, e.g., In re Online DVD-Rental, 779 F.3d at 947-48 (upholding reasonableness of $5,000 incentive awards that were roughly 417 times larger than $12 individual awards because the number of representatives was relatively small, and the total amount of incentive awards "ma[de] up a mere .17% of the total settlement fund").

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Final Approval of Class Action Settlement **(Document No. 41)** is **granted** as set forth herein.

2. The court hereby **grants final approval** of the parties' Stipulation and Settlement of Class and Representative Action ("Settlement Agreement") **(Document No. 28-3)**. The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in ¶ I.F of the Settlement Agreement.

4. The form, manner, and content of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

5. Plaintiffs Brent Anderson and Vernon Fife shall each be paid a service payment of $5,000 in accordance with the terms of the Settlement Agreement and this Order.

6. Class counsel shall be paid $912,500.00 in attorney's fees, and $15,052.41 in costs in accordance with the terms of the Settlement Agreement and this Order.

7. The Claims Administrator, Rust, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

8. The LWDA shall be paid $37,500.00 pursuant to the Settlement Agreement.

9. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

10. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

12. Judgment shall be entered accordingly.

Dated this 23rd day of October, 2020.

/s/
Fernando M. Olguin
United States District Judge